IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> JUAN MANUEL VELOZ and MARIA ANGELICA VELOZ, INDIVIDUALLY and d/b/a EL BURRITO VELOZ RESTAURANT, <br><br>  Defendants. | Case No.: 1:10-cv-00761 LJO JLT <br><br> FINDINGS AND RECOMMENDATION DENYING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT <br><br> (Doc. 17) |

J & J Sports Productions, Inc., ("Plaintiff") seeks the entry of default judgment against Maria Angelica Veloz, individually and doing business as El Burrito Veloz Restaurant ("Defendant"). (Doc. 17). Defendant did not oppose Plaintiff's application. The Court reviewed Plaintiff's motion and issued its Findings and Recommendations denying Plaintiff's application for default judgment on October 27, 2010, because Plaintiff had not provided evidence that it was entitled to damages. (Doc. 21). On November 9, 2010, Plaintiff objected to the Findings and Recommendations and provided previously omitted evidence. (Doc. 22) In light of the new evidence, the Court withdrew the Findings and Recommendations and ordered supplemental briefing by Plaintiff. (Doc. 23).

For the following reasons, the Court recommends that Plaintiff's application for default judgment be **DENIED**.

## I. Procedural History

On April 30, 2010, Plaintiff filed its complaint against husband and wife(though currently divorcing), Juan and Maria Veloz, alleging violations of 47 U.S.C. § 605, *et seq.*, 47 U.S.C. § 533, *et seq.*, the California Business and Professions Code § 17200, *et seq.*, and for wrongful conversion of property under California State law.  (Doc. 1 at 3-7).  Plaintiff's claims are based upon the defendants' alleged unlawful interception and broadcast of the May 2, 2009 televised program, "The Battle of East and West: Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program" ("the Program"), to which Plaintiff allege exclusive rights to nationwide, commercial distribution.  *Id.* at 3.

Juan Veloz and Maria Veloz were properly served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure.  The Court granted Mr. Veloz an extension of time in which to file his answer to the complaint, which he did on September 22, 2010. (Doc. 19).  In his answer, Juan Veloz stated that he had paid for a receiver-box to allow the satellite-distributed Program to be received at his house.  *Id.* at 1. On May 2, 2009, he "took the [receiver] box from [his] house to the restaurant."  *Id.*  Mr. Veloz stated that he did not publish the Program with a commercial purpose for his own benefit and explained that all food and drinks provided at the restaurant during the Program were free because they were celebrating his wife's birthday.  *Id.*  Mr. Veloz stated that he was not sure if this was a violation of the law "but noting [sic] I did was with a bad intention."  *Id.*

Upon application of Plaintiff, and pursuant to Fed. R. Civ. P. 55(a), default was entered against Maria Veloz for her failure to answer on August 25, 2010.  (Doc. 16).  Plaintiff filed this application for default judgment on September 14, 2010.  (Doc. 17).  The Court issued its Findings and Recommendation Denying Plaintiff's Application for Default Judgment on October 27, 2010. (Doc. 21).  Plaintiff timely filed its Objections to the Magistrate Judge's Findings and Recommendations ("the Objections") on November 9, 2010.  (Doc. 22).  At that time, Plaintiff provided new evidence to the Court with the Objections. *Id*.  Also, Plaintiff filed supplemental brief according to the Court's order, addressing whether default judgment should be granted against a single defendant where another remains in the action.  (Doc. 25).

## II. Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 12 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

## III. Plaintiff's Factual Allegations

Plaintiff states that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 3). On behalf of Plaintiff, G& G Closed Circuit Events handled the sales of the sublicensing agreements for the Program. (Doc. 22 at 7). Without purchasing a sublicense from Plaintiff, Defendant broadcasted the Program in her establishment, which had a capacity of approximately 250 people. (Doc. 17-3 at 2). For this act, Plaintiff alleges violation of 47 U.S.C. § 605, conversion, and a violation of the California Business and Professions Code. (Doc. 1 at 9-10). However, in its application for default judgment, Plaintiff requested damages only for the violation

of 47 U.S.C. § 605 and conversion.  (Doc. 17).  Therefore, the Court will only address these claims against Defendant.

## IV.   Application of *Eitel* Factors

Applying the factors articulated by the Ninth Circuit in *Eitel*, listed above, the Court finds that the factors weigh against of the entry of default judgment.

### A.   Prejudice to Plaintiff

Plaintiff has no other alternative by which to recover damages suffered as a result of Defendant's piracy.  *See J & J Sports Prods. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010).  Therefore, the Court finds that Plaintiff would be prejudiced if a default judgment is not granted.

### B.   Merits of Plaintiff's claim and the sufficiency of the complaint

Given the kinship of the merits of Plaintiff's claims and the sufficiency of the complaint, these factors are considered together.  *J & J Sports Prods. v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).  The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175, citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3.  In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."  47 U.S.C. § 605(a).  Thus, the Communications Act claim requires Plaintiff to prove that it was the party aggrieved by Defendant's actions.  47 U.S.C. § 605(e)(3)(A).  A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming."  47 U.S.C. § 605(d)(6).

4

In the complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 3). The rate sheet for the Program, attached as Exhibit 1 to the affidavit of Joseph Gagliardi, president of J & J Sports Productions states:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events, Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

(Doc. 18, Ex. 1). Upon concern expressed by the Court regarding Plaintiff's failure to make factual allegations connecting Plaintiff and G &G Closed Circuit Events, Plaintiff included evidence in its Objections establishing a business relationship between Plaintiff and G & G Closed Circuit Events. Specifically, Mr. Gagliardi stated:

> Our firm utilized a company called G & G Closed Circuit Events, LLC...to sell closed-circuit licenses to commercial locations throughout the United States. G & G had an exclusive agreement in that regard and for that reason, it was G & G (rather than our company) that prepared the Rate Card evidencing commercial licensing fees applicable to this particular event.

(Doc. 22-1 at 2, n. 2). In addition, Plaintiff provided a copy of the Closed Circuit Television License Agreement dated March 4, 1009, in which Plaintiff confirms its purchase of the licensing rights to the Program. (Doc. 22, Ex. 1). Therefore, Plaintiff has established that it held the rights to distribute the Program.

In addition to establishing that it was the "person aggrieved," Plaintiff must establish that Defendant intercepted a wire or radio communication and published it without Plaintiff's permission. 47 U.S.C. § 605(a). Plaintiff alleges that it is unable to "determine the precise means that the Defendant used to receive the Program" because Defendant failed to answer the complaint, and argues, "Plaintiff should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendant used . . ." (Doc. 17-1 at 3). Similarly, in *Hernandez*, Plaintiff[1] was unable to identify the nature of the transmission. As noted by the Court, Plaintiff's inability to allege the precise nature of the intercepted transmission in this case. . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*,

---

[1] Notably, Plaintiff in the matter now before the Court was the plaintiff in *Hernandez*, and represented by the same attorney, Thomas Riley, Jr. *See* No. 2:09-cv-3389 GEB KJN.

2010 U.S. Dist. LEXIS 48191, at *10.  According to the Ninth Circuit, satellite signals are communications covered by 47 U.S.C. § 605(a). *Id.*, citing *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).  Regardless of Plaintiff's inability to isolate the means of the signal transmission, Plaintiff has raised factual allegations that indicate the Program was broadcast in Defendant's establishment though Defendant did not purchase a license for the broadcast, because Plaintiff's investigator witnessed the Program on a 42" television in the defendant's establishment. (Doc. 17-3 at 2).

Where alleged facts are challenged by evidence before the Court, the Court is not required to assume the pleaded facts as true. *See Pope*, 323 U.S. at 12.  Here, for purposes of calculating damages, the Court declines to assume as true the allegations in the complaint regarding the responsibility of Defendant Maria Veloz for Plaintiff's damages. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1059 (2009) (claims are assumed true when "factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Dillard v. Victoria M. Morton Enters.*, 2010 U.S. Dist. LEXIS 48539, at * 21 (E.D. Cal. Aprl. 23, 2010) ("although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, 'necessary facts not contained in the pleadings . . . are not established by default"), quoting *Cripps v. Life Ins. Co. of N. Am.*, 908 F.3d 1261, 1267 (9th Cir. 1992) .  Notably, in Juan Veloz's answer to the complaint, which was filed after this motion was made, he states, "*I* took the box from my house to the restaurant." (Doc. 19 at 1) (emphasis added).  Therefore, there is a judicial admission, contrary to Plaintiff's allegations, that the defendant other than the one against whom default judgment is sought, was the party who intercepted and published the Program without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Ca. Rptr. 3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of

6

property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G& G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10, citing *Don King Prods./Kingsvision v. Lovato, 911 F.Supp*. 429, 423 (N.D. Ca. 1995). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

With the additional evidence, Plaintiff has demonstrated that it had the right to license broadcasting of the Program. *See Phelan*, 2009 U.S. Dist. LEXIS 103626, at *34 (as evidence of distribution rights, the plaintiff provided a contract that on its face granted Plaintiff the exclusive right to license Golden Boy's telecast of a boxing match). However, as addressed above, the answer filed by Juan Veloz seemingly indicates that he, rather than Defendant, wrongfully possessed the property. Therefore, the elements of conversion are not met.

C.  Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendants' conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. (Doc. 17-1 at 13-15). In addition, Plaintiff seeks compensatory and punitive damages for Defendant's tortuous conversion of Plaintiff's property. *Id.* at 20. Plaintiff asserts that the defendants would have been required to pay $2,800 to broadcast the program at their establishment, but Plaintiff feels nominal damages have proven insufficient to combat piracy, and the defendants should be required to pay the statutory maximum. (Doc. 17-1 at 19-20). Thus, Plaintiff seems to concede that the amount of damages requested is not proportional to the defendants' conduct. Given the substantial amount of money at stake, the Court finds this factor weighs against the entry of default judgment at this time. *See,* citing *Eitel*, 782 F.2d at 1472; *see also, e.g., J & J Sports Prods. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5

(N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved").

### D. Possibility of dispute concerning material facts

The Court also considers the possibility of dispute as to any material facts in the case. Here, there is a possibility of a dispute concerning the material facts because Juan Veloz has appeared to defend himself and, in his answer, has accepted responsibility for the wrongful act and in doing so did not impute any responsibility to Maria Veloz. Plaintiff acknowledged the possibility of dispute as to the liability of each party, and stated: "[I]f it were established through discovery that one Defendant had no responsibility for the broadcast, Plaintiff would consider voluntarily dismissing that Defendant (as Plaintiff has done in similar cases previously)." (Doc. 25 at 6). However, if default judgment were granted, it would be too late for Defendant to be dismissed from the action. Rather, a motion to set aside default judgment would have to be made by a party. Therefore, this factor weighs against granting default judgment at this time.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel,* 782 F.2d at 1472. Here, Defendant was properly served with the summons and complaint. Moreover, Defendant received Plaintiff's motion for default judgment. Given these circumstances, it is unlikely that Defendant's failure to answer, and the resulting defaults entered by the Clerk of Court, was a result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against entry of default judgment.

### F. Policy disfavoring judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendant's failure to answer the complaint makes a decision on the merits of her liability somewhat impractical. However, as indicated above, a defendant remains whose answer accepts liability and who fails to assign any

responsibility for the unlawful act to Maria Veloz.  Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits weighs against Plaintiff.

### V. Default Judgment against a Single Defendant

Plaintiff seeks judgment against defendant Maria Veloz, although another defendant remains who has filed an answer to defend in the action.  Under the Federal Rules of Civil Procedure, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all claims or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b). Therefore, the Court has discretion to deny entry of default judgment as to Defendant Maria Veloz at this time given there is a just reason to delay doing so.  *Id.*; *see also Shanghai*, 194 F.Supp.2d at 1005.

The Supreme Court warned that "absurdity might follow" in instances where a court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others."  *Frow v. De La Vega*, 82 U.S. 552, 554 (1872).  The Ninth Circuit has summarized the *Frow* standard as follows:  "[W]here a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."  *In re First T.D. & Investment*, 253 F.3d 520, 532 (9th Cir. 2001), citing *Frow*, 82 U.S. at 554.  In addition, the Ninth Circuit extended the rule beyond only jointly liable parties to those who are "similarly situated."  *Id.*

Plaintiff argues that this rule is not applicable to this action, because "the key is to recognize that the *Frow* principle is designed to apply only when it is necessary that the relief against the defendants be consistent."  (Doc. 25 at 4), quoting *Shanghai*, 194 F.Supp.2d at 1008.  According to Plaintiff, the liability of the defendants in this action does not have to be the same, and the liability of Maria Veloz "does not *necessarily* decide the liability of Defendant Juan Veloz."  (Doc. 25 at 5) (emphasis in original).  As a final point, Plaintiff asserts that "the liability of both [defendants] is not inextricably intertwined."  *Id*. at 6.

However, in so arguing, Plaintiff ignores that its complaint was filed against Juan Veloz and Maria Veloz, individually *and doing business as El Burrito Veloz Restaurant*.  (Doc. 1, emphasis

added.) In the complaint, Plaintiff alleges that Maria Veloz "is an owner, and/or operator, and/or licensee and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as El Burrito Veloz Restaurant." *Id.* at 3. Plaintiff makes the same assertion as to Juan Veloz. *Id.* Therefore, the alleged liability of the individual defendants overlaps with their liability as it relates to operating the business.[2]

When a case involves multiple parties or claims, "[c]onsiderations of fairness and sound administration of justice are also applicable to the entry of default judgment." *Johnson v. Cate*, 2009 U.S. Dist. LEXIS 57942, at * 2 (E.D. Cal. June 23, 2009). In the supplemental briefing, Plaintiff failed to address how the entry of default judgment here–with the accompanying determination of the damage award-- would affect the liability of Juan Veloz individually or as the co-owner of the restaurant where the Program was broadcast. Therefore, even if the *Eitel* factors had not weighed as heavily against Plaintiff, it is in the interest of justice to not enter default judgment against defendant Maria Veloz while the liability of Juan Veloz remains undetermined. *See SEC v. Loomis*, 2010 U.S. Dist. LEXIS 87021, at *12-13 (E.D. Cal. Aug. 2010) (the Court found just reason for delay in entry of default judgment "given the overlapping nature of the claims as to different defendants"). This recommendation will be made without prejudice to Plaintiff's refiling the motion at a more appropriate time.

**VI. Findings and Recommendations**

Given the issues discussed above, and the strong policy favoring decisions on the merits rather than the issuance of default judgment, the Court would be acting within its discretion in denying entry of default judgment. *See Aldabe*, 616 F.2d at 1092. Therefore, the Court **RECOMMENDS** that Plaintiff's request for entry of default judgment against Maria Angelica Veloz, individually and doing business as El Burrito Veloz Restaurant be **DENIED WITHOUT PREJUDICE.**

---

[2] Likewise, Plaintiff fails to consider how the Velozs' individual liabilities intertwine with their respective partnership interests in the restaurant as well as in their marital community.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to any objections shall be filed within 14 days of the filing of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 9, 2010**             /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE