UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> JUAN MANUEL VELOZ and MARIA ANGELICA VELOZ, individually and d/b/a EL BURRITO VELOZ RESTAURANT, <br><br>  Defendants. | Case No.: 1:10-cv-00761 - LJO - JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (Doc. 39) |

J & J Sports Productions, Inc. ("Plaintiff") seeks the entry of default judgment against Defendants Juan Manuel Veloz and Maria Angelica Veloz, individually and doing business as El Burrito Veloz Restaurant ("Defendants"). (Doc. 39). Defendants have not opposed this motion.

Having reviewed the motion and supporting documents, the Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g). Therefore, the matter was taken under submission on August 13, 2012. (Doc. 40). For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED IN PART AND DENIED IN PART**.

**I.     Procedural History**

On April 30, 2010, Plaintiff filed its complaint against Defendant and Juan Manuel Veloz, alleging violations of 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, *et seq.*; and the California Business and Professions Code § 17200, *et seq.*  In addition, Plaintiff alleges Defendant and Juan Manuel Veloz

1

are liable for wrongful conversion of property, arising under California State law. (Doc. 1 at 3-7). Plaintiff possessed the exclusive rights to the nationwide commercial distribution of "The Battle of East and West: Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program" ("the Program"), televised on May 2, 2009. *Id.* at 3. Plaintiff's claims are based upon Defendants' alleged unlawful interception and broadcast of the Program.

Juan Veloz and Maria Veloz were properly served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. The Court granted Juan Veloz an extension to file his answer to the complaint, which he did on September 22, 2010. (Doc. 19). However, Maria Veloz failed file an answer. Upon application of Plaintiff, default was entered against Maria Veloz pursuant to Fed. R. Civ. P. 55(a) for her failure to answer on August 25, 2010. (Doc. 16). Plaintiff filed an application for default judgment against Maria Veloz on September 14, 2010. (Doc. 17). Plaintiff's motion was denied on December 28, 2010, because there was a just reason to delay entry of default while Juan Veloz remained in the action to defend. (Doc. 27).

On May 16, 2012, the answer filed by Mr. Veloz was stricken from the record for failure to comply with the Court's orders and the Local Rules. (Doc. 38). In addition, the Court directed Plaintiff to file a motion for default judgment within 45 days, or no later than July 2, 2012. *Id.* In compliance with the Court's order, Plaintiff filed its application for default judgment now pending before the Court. (Doc. 39).

**II.     Legal Standards for Default Judgment**

The Federal Rules of Civil Procedure govern the entry of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III.    Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 3). According to Mr. Joseph Gagliardi, president of J & J Sports Productions, sales of the sublicensing agreements for the Program were made by G & G Closed Circuit Events. (Doc. 22 at 2, n. 2). In addition, Mr. Gagliardi reported the company endeavors to "police [its] signals for the purpose of identifying and prosecuting establishments which pirate [the] programming," and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates." *Id.* at 2-3.

Plaintiff asserts each defendant "is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as El Burrito Veloz Restaurant..." (Doc. 1 at 3). Plaintiff alleges Defendants engaged in an act of signal piracy by broadcasting the Program in their establishment without purchasing a proper sublicense. *Id.* at 4. For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and

1 Professions Code. *Id.* at 3-8. However, in its application for default judgment, Plaintiff requested
2 damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 39-1). Therefore, the Court
3 will address only these claims.

**IV. Application of *Eitel* Factors**

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in favor of granting Plaintiff's motion for default judgment.

A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to a plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. In general, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *J & J Sports Prods. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

B. Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3. In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, the Communications Act claim requires Plaintiff to prove that it was the party aggrieved by Defendant's actions. 47 U.S.C. §

4

605(e)(3)(A). A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6).

In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 3). The rate sheet for the Program, attached to the affidavit of Mr. Gagliardi, states:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G & G Closed Circuit Events, Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

(Doc. 22-1, Ex. 2). Individuals with questions regarding viewing packages are directed to contact Art Gallegos, Vice President of G & G Closed Circuit Events. *Id.* Mr. Gagliardi explained:

> Our firm utilized a company called G & G Closed Circuit Events, LLC . . . to sell closed-circuit licenses to commercial locations throughout the United States. G & G had an exclusive agreement in that regard and for that reason, it was G & G (rather than our company) that prepared the Rate Card evidencing commercial licensing fees applicable to this particular event.

(Doc. 22-1 at 2, n.2). Consequently, the Court finds Plaintiff was the party aggrieved under § 605.

In addition to establishing that it was a "person aggrieved," Plaintiff must show Defendants intercepted a wire or radio program and published it without Plaintiff's permission. 47 U.S.C. § 605(a). Plaintiff acknowledges that it is unable to "isolate the precise method of interception" that the Defendant used to receive the Program." (Doc. 39-1 at 10). Similarly, in *Hernandez*, Plaintiff was unable to identify the nature of the transmission.[1] As noted by the Court, "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *10. Regardless of Plaintiff's inability to determine the means of the signal transmission, Plaintiff has provided evidence that the Program was broadcast in Defendants'

---

[1] The plaintiff in the matter now before the Court was the plaintiff in *Hernandez*, and represented by the same attorney, Thomas P. Riley. *See* No. 2:09-cv-3389 GEB KJN.

establishment though Defendants did not purchase a commercial license for the broadcast, because Plaintiff's investigator witnessed the Program on a 42" television in the defendant's establishment. (Doc. 17-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." G.*S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010) (citing *Don King Prods./Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property." In addition, Plaintiff has shown Defendants engaged in signal piracy by broadcasting the program without a sublicense. *See Phelan*, 2009 U.S. Dist. LEXIS 103626, at *34 (as evidence of distribution rights, the plaintiff provided a contract that on its face granted Plaintiff the exclusive right to license Golden Boy's telecast of a boxing match). The rate sheet attached to the affidavit of Mr. Gagliardi indicates a sublicense would have cost $2,800 for an establishment with the capacity between 201-300 persons. (Doc. 22-1, Exh. 2). Plaintiff's investigator estimated the establishment had a capacity of 250 people. (Doc. 17-3 at 2). Consequently, Plaintiff has established damages in the amount of $2,800, and has stated a claim for conversion against Defendants.

C.     Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. (Doc. 39-1 at 13-14). In addition, Plaintiff seeks compensatory and punitive damages for Defendant's tortuous conversion of Plaintiff's property. *Id.* at 22. Plaintiff asserts Defendants would have been required to pay $2,800 to broadcast the program at their establishment, but Plaintiff asserts nominal damages have proven insufficient to combat piracy, and Defendants should be required to pay the statutory maximum. *Id.* at 20-22. Thus, Plaintiff seems to concede that amount of damages requested is not proportional to Defendants' conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez,* 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). As discussed below, the Court declines to enter judgment in the amount requested. Therefore, the factor does not weigh against Plaintiff.

D.     Possibility of dispute concerning material facts

The Court considers also the possibility of dispute as to any material facts in the case. Generally, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendants have failed to defend their case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. Therefore, this factor does not weigh against entry of default judgment.

E.   Whether default was due to excusable neglect

Generally, the Court will consider whether Defendants' failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendants were served with the Summons and Complaint, and Plaintiff attempted service of the motion for default judgment. (*See* Doc. 39-1 at 24). Moreover, Mr. Veloz failed to comply with the Court's orders or the Local Rules after appearing in the action, and his action was stricken from the record. Given these circumstances, it is unlikely that Defendants' actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

F.   Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendants' failure to answer the Complaint makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against Plaintiff.

**V.   Damages**

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendant's act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's [sic] unlawful actions." (Doc. 39-1 at 13). As noted, Plaintiff requests the statutory maximum, including enhanced damages for violation of the Communications Act, and damages for the tort of conversion, bringing the total requested to $112,800.

A.   Statutory Damages

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When a court finds a violation was "committed willfully and for the purposes of

direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii).

Plaintiff's investigator estimated the capacity at El Burrito Veloz Restaurant was 250, and headcounts revealed 50-51 people were present. (Doc. 17-3 at 2). No cover charge was required for entry. *Id.* The program was shown on a single 42" television "mounted on the southern wall just west of the entrance." *Id.* Plaintiff provided no evidence of advertising, that a premium was charged for food or drinks, or that Defendants engaged in signal piracy on previous occasions.

Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for Defendants' wrongful interception and broadcast of the Program. In support, Plaintiff identifies several cases from this district awarding the statutory maximum, including: *J & J Sports Productions Inc. v. Olivares*, 2011 U.S. Dist. LEXIS 12635, 2011 WL 587466 (E.D. Cal. Feb 9, 2011) (awarding $10,000 under § 605, plus enhanced damages, where the program was broadcast on three televisions in an establishment with a capacity of 50 persons, but more than 60 patrons were present during the broadcast); *J & J Sports Productions, Inv. v. Pollard*, 2011 U.S. Dist. LEXIS 19298, 2011 WL 777931 (E.D. Cal. Feb. 28, 2011) (awarding the statutory maximum, with enhancement, where the program was displayed on a single television to an audience of 23-25 people); *J & J Sports Productions, Inc. v. Tilakamonkul*, 2011 U.S. Dist. LEXIS 62120, 2011 WL 2414550 (E.D. Cal. June 10, 2011) (awarding the maximum under § 605 plus enhancements where the program was broadcast to 8 patrons in a restaurant with a capacity of 60 persons); *J & J Sports Productions, Inc. v. Herrera*, 2011 U.S. Dist. LEXIS 15948, 2011 WL 643413 (E.D. Cal. Feb. 17, 2011) (awarding $10,000 under § 605 where the program was broadcast on two televisions to approximately 30 patrons in the restaurant with a capacity of 80).

Though Plaintiff asserts these cases are comparable to the matter now pending before the Court, there are factors that distinguish this action to the aforementioned cases. For example, in *Olivares*, the program was broadcast on three televisions to an audience that exceeded the capacity of the restaurant. *Id.*, 2011 U.S. Dist. LEXIS 12635, at * 6. Further, in *Tilakamonkul*, the program was displayed on a "sixty-inch projection style television set" in a restaurant the investigator opined was

"in very good condition." *Id.*, 2011 U.S. Dist. LEXIS 62120, *at 9. In contrast, here, the program was displayed on a smaller television set and the investigator opined the restaurant "rates good." (Doc. 17-13 at 2).

Significantly, the Ninth Circuit observed, "The range in the statutory award might allow for a sanction that deters but does not destroy." *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009). Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 under §605 and $1,800 for conversion, for a total of $5,400 that equaled "three times Plaintiff's actual damages"); *Joe Hand Promotions v. Brown*, 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where there were 13-17 patrons present, the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010) (awarding $1,000 in statutory damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television).

Recently, the Court declined to award the statutory maximum in a case closely analogous to the matter now before the Court. In *Joe Hand Promotions Inc. v. Hathcock*, the defendant's restaurant had a capacity of approximately 150 persons, but "since only 51 to 53 were present while Defendants were displaying the program, the restaurant was not even one-third full." *Id.*, 2012 U.S. LEXIS 85758, at *8 (E.D. Cal. June 20, 2012). The Court observed:

> Awarding the statutory maximum is inappropriate "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight." *Don King Productions/ Kingvision v. Maldonado*, 1998 U.S. Dist. LEXIS 20165, 1998 WL 879683 (N.D. Cal. December 11, 1998) (No. C-97-3530 WHO MED), *citing Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D. Pa. 1997). Nothing in the record suggests that Defendants experienced any significant "commercial advantage or private financial gain" as a result of its airing the program. There was no cover charge. Plaintiff does not allege that Defendants promoted the showing the program in any way

or charged premium prices for food and drinks during the program. With its highest head count of the evening at 53 persons, showing the program produced minimal financial gain, if any. In light of these facts, imposing the maximum statutory damages and enhancement would be inappropriate.

*Id.* at *8-9. Accordingly, the Court awarded statutory damages in the amount of $3,000. *See Joe Hand Promotions v. Hathcock*, 2012 U.S. Dist. LEXIS 101208 (E.D. Cal. July 20, 2012). Likewise, here, Plaintiff's investigator noted there was no cover charge, and there is no evidence the prices for food and drinks were raised the night of the program, and Plaintiff has not presented evidence that Defendants advertised their broadcast of the Program. Further, the number of customers in the restaurant amounted to less than a third of the capacity. On the other hand, the capacity of the El Burrito Veloz was larger than the restaurant in *Hathcock*, and the proper sublicense was more expensive. Consequently, the Court finds $6,000 is an appropriate award of statutory damages.

B.      Enhanced Damages

Asserting a right to enhanced damages, Plaintiff urges the Court to find "Defendants' interception, receipt, and broadcast of the encrypted *Program* was willful and for the purposes of financial gain." (Doc. 39-1 at 17). However, allegations regarding the amount of damages must be well-plead and supported by factual allegations. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. "The mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Sorondo*, 2011 U.S. Dist. LEXIS 99951, at *10 (quoting *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Here, Plaintiff alleged: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Doc. 1 at 4). There are no factual allegations in the complaint to support the conclusion that Defendants' actions were willful or for the purpose of financial gain. Recently, the Court explained:

> To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his or her claim. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678. A

11

> plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56 (internal quotation marks and citations omitted). In its complaint, Plaintiff simply alleged a legal conclusion: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the Defendant [sic] was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

*Hathcock*, 2012 U.S. Dist. LEXIS 101208, at *2-3. Consequently, the Court found Plaintiff "failed to allege facts establishing the grounds of entitlement to enhanced damages." *Id.* at *3. Significantly, the complaint in *Hathcock* contained the same language as the complaint now before the Court, and suffers the same infirmities, and enhanced damages are not recommended.

### C. Damages for Conversion

Plaintiff requests $2,800 for damages for the tort of conversion. (Doc. 39-1 at 22). As discussed above, Defendants would have been required to pay $2,800 for the sublicense, and Plaintiff is entitled to this amount in damages. *See, e.g., Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *6 (calculating damages for conversion based upon the amount defendants would have been required to pay for a broadcasting sublicense); *Brown*, 2010 U.S. Dist LEXIS 119435, at *16-17; *but see J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (declining conversion damages statutory damages "sufficiently compensate[d]" the plaintiff). Therefore, the Court recommends $2,800 in damages for the tort of conversion.

## IV.   Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendants' actions. Importantly, when determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.* As observed in Streshly, Defendants "may be the

Blackbeard of pirates, but Plaintiff makes no attempt to portray [them] as such, and to the contrary, the act of piracy attributed to [Defendants] is as routine as they come . . ." *Streshly*, 655 F.Supp.2d at 1139 (S.D. Cal. 2009). Consequently, the Court declines to recommend that Plaintiff's request for an award of the statutory maximum be ordered. Further, enhanced damages are not warranted because there is the factual allegations in the complaint do not support the legal conclusion that Defendants acted willfully, and there is no evidence of any financial gain or commercial advantage gained by Defendants' broadcast of the program.

Accordingly, the Court recommends the award of $6,000 for the violation of § 605, and $2,800 for the tort of conversion, for a total award of $8,800. This amount, which is more than three times the cost of a proper sublicense for the Program, both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy. *See Lake Alice Bar*, 168 F.3d at 350 (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, IT IS HEREBY RECOMMENDED:

1. Plaintiff's application for default judgment (Doc. 39) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

    A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $6,000;

    B. Plaintiff's request for enhanced damages be **DENIED**;

    C. Plaintiff's request for damages for the tort of conversion be **GRANTED** in the amount of $2,800; and

2. Plaintiff be directed to file its application for attorney's fees pursuant to 47 U.S.C. § 605 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 15, 2012**                              **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE